**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CATHERINE BOLLINGER,** | ) | |
| **Plaintiff** | ) | **C.A. No. 05-318 Erie** |
| | ) | |
| **v.** | ) | **District Judge McLaughlin** |
| | ) | **Magistrate Judge Baxter** |
| **NEW CASTLE BEAUTY SCHOOL,** | ) | |
| **Defendant** | ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**


**I.      RECOMMENDATION**

It is respectfully recommended that Defendant's motion for summary judgment

[Document # 20] be granted in part and denied in part.


**II.      REPORT**

**A.      Relevant Procedural History**

Plaintiff brings this action against Defendant New Castle Beauty School ("New Castle"),

pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.,

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and the

Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951, et seq.  Specifically, Plaintiff

claims that New Castle discriminated against her based upon her age and/or gender when (i) it

allegedly chose to hire a male applicant over Plaintiff to fill its vacant Director position for

which she applied in February 2004, and (ii) it allegedly terminated Plaintiff's employment in

March 2005.  As relief for her claims, Plaintiff seeks to recover back pay, front pay or

reinstatement, and compensatory and punitive damages.

New Castle has filed a motion for summary judgment, contending that Plaintiff cannot

establish a *prima facie* case of either gender or age discrimination.  Alternatively, New Castle

contends that, even if Plaintiff could establish a *prima facie* case of discrimination, either on the

basis of gender or age, she is unable to refute New Castle's legitimate, non-discriminatory

reasons for its decision to hire someone else for the Director position, and for its actions related to the cessation of Plaintiff's employment with New Castle.

Plaintiff has filed a brief in response to Defendant's motion, claiming that she has, in fact, set forth a *prima facie* case of both gender and age discrimination, and that she has produced sufficient record evidence to establish genuine issues of material fact as to whether New Castle's articulated reasons for its challenged actions were merely pretexts for gender and/or age discrimination.  New Castle has filed a reply brief refuting the arguments raised in Plaintiff's response.  This matter is now ripe for consideration by this Court.

---

### B.    Relevant Factual History[1]

New Castle and the Butler Beauty School ("Butler") are two of five beauty schools operated under common ownership in Western Pennsylvania. (Document # 22 at ¶ 1).  The other schools are located in Beaver Falls, Kittanning, and Punxsutawney, Pennsylvania. (Id.).  Janice Crawford ("Crawford") is the Executive Director of four of the schools, including Butler and New Castle. (Id. at ¶ 2).  Crawford's responsibilities include the authority to hire directors and instructors at the schools. (Id. at ¶ 3).  Crawford's date of birth is June 1, 1949, making her approximately 1½ years older than Plaintiff, who was born on January 11, 1951. (Id. at ¶ 4).

In or around March 2001, Crawford offered Plaintiff an instructor position at Butler. Plaintiff accepted the position and commenced employment at Butler on April 1, 2001. (Id. at ¶ 7).  Plaintiff's employment at Butler continued until June 14, 2001, at which time she accepted an instructor position at New Castle.  At that time, New Castle's Director was Melissa Ball ("Ball"), who remained as Director until February 2004. (Id. at ¶ 8).  Ball's date of birth is April 27, 1966, which made her 37 years of age at the time she left her employment as New Castle's

---

[1]

The factual history set forth herein is taken from New Castle's Statement of Undisputed Facts [Document # 22], to the extent the same have been admitted or have not been disputed by Plaintiff, as well as from additional fact statements set forth by Plaintiff in her response to New Castle's Statement of Undisputed Facts [Document # 26], to the extent the same are fully supported by the record in this case.

Director. (Id. at ¶ 9).  In February 2004, the following four individuals applied for the Director position vacated by Ball:

| Name | Date of Birth | Age as of February 2004 |
| --- | --- | --- |
| Sandra L. Genareo. | April 26, 1951 | 52 yrs, 10 mos. |
| Catherine Bollinger | January 11, 1951 | 53 yrs, 1 mo. |
| Brenda Irene Weber | November 16, 1964 | 39 yrs., 3 mos. |
| Jamie J. Boyer | April 2, 1973 | 30 yrs., 10 mos. |

(Id. at ¶ 10).

Based upon Genareo's experience and the strength of her interview, Crawford chose her to fill the position of New Castle's Director. (Id. at ¶ 14).  Unfortunately, Genareo's organizational skills proved to be inadequate and, as a result, she was terminated from the Director position on or about June 7, 2004. (Id. at ¶ 21).

In June 2004, Kathi Montpere ("Montpere"), Butler's Director, informed Crawford that she was aware of a potential candidate to replace Genareo as New Castle's Director.  The potential candidate was Dennis Hockenberry ("Hockenberry"). (Id. at ¶ 23).  Hockenberry had owned and operated his own beauty salon for more than 24 years, where he was responsible for accounting, banking, inventory, personnel management, interior salon design, and equipment procurement.  He also had prior experience operating and managing a career school, received his cosmetology license in 1978, and had recently completely Butler's program to be certified as a cosmetology teacher. (Id. at ¶ 24).  Hockenberry's date of birth is August 28, 1958, which made him 45 years and 10 months of age in June 2004. (Id.).  Impressed with Hockenberry's career school, management, and salon experience, Crawford offered him the Director's position, which he accepted. (Id. at ¶ 26).  Hockenberry commenced his employment at New Castle on or about June 14, 2007. (Id. at ¶ 27).

During his tenure as New Castle's Director, Hockenberry raised concerns about

3

Plaintiff's employment performance, including a concern that she was becoming too involved in students' personal lives, and she was spending too much time on the telephone or meeting personally in the office with graduates regarding matters that did not concern New Castle or the education of the former students. (Id. at ¶ 28).

On March 23, 2005, Crawford and New Castle's financial aid officer, Josette Sullivan ("Sullivan"), conducted a series of personnel meetings with New Castle's staff, including Hockenberry and Plaintiff, to identify, discuss, and resolve any problems or conflicts, and to facilitate greater cooperation, among the staff. (Id. at ¶ 31).  During her separate meeting with Crawford and Sullivan, Plaintiff stated that her husband had been encouraging her to quit her job at New Castle, and that she felt she "might as well quit and go to WalMart to work." (Id. at ¶ 33).  No issues regarding age or gender were raised by Plaintiff, Crawford, Sullivan, or any other staff members during these personnel meetings. (Id. at ¶ 35).  During the general staff meeting at the end of the day, Hockenberry and Darlene Hetrick ("Hetrick"), the other instructor at New Castle, made a number of disparaging comments regarding Plaintiff's teaching ability and the closeness of her student relationships. (Id. at ¶ 36; Bollinger Deposition, Vol.II, attached as Exhibit J to Document # 23, at pp. 117-119).  As a result, Plaintiff became visibly upset and asked to go home. (Id. at ¶ 37; Bollinger Deposition, Vol. II, attached as Exhibit J to Document # 23, at p. 120).

Treating Plaintiff's statements and actions during the personnel meetings as an "apparent resignation," Crawford immediately began searching for a replacement instructor to cover Plaintiff's classes. (Id. at ¶ 40).  The next day, on March 24, 2005, Plaintiff returned to New Castle at 8:00 a.m., but left the school shortly thereafter without communicating with any person having the authority to terminate her employment. (Id. at ¶¶ 42-43).  Later the same day, Plaintiff had a brief telephone conversation with Crawford to find out what was going on with her employment situation, and Crawford responded that Plaintiff had quit. (Id. at ¶ 43).  New Castle did not hire anyone to replace Plaintiff after her departure.  Instead, Hetrick assumed

responsibility for Plaintiff's classes and other job duties. (<u>Id</u>. at ¶ 44).  Hetrick's date of birth is October 16, 1954, making her three years and nine months younger than Plaintiff. (<u>Id</u>. at ¶ 45).

After Plaintiff's employment with New Castle ended, Plaintiff filed a claim for unemployment compensation benefits.  After a hearing at which Plaintiff was represented by counsel, the unemployment compensation referee determined that Plaintiff had voluntarily resigned her employment and denied her claim for benefits. (<u>Id</u>. at ¶ 46).

On April 4, 2005, Plaintiff also filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") raising claims of gender and age discrimination. (Document # 23, Exhibit D).  On July 29, 2005,the EEOC issued a Dismissal and Notice of Rights terminating the processing of Plaintiff's charge because it was "unable to conclude that the information obtained establishes violations of the statutes."  This lawsuit ensued.

### C.      Standard of Review

Federal Rule of Civil Procedure 56(c)  provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986); <u>Country Floors, Inc. v. Partnership Composed of Gepner and Ford</u>, 930 F.2d 1056, 1061

(3d Cir. 1990).  Further, "[R]ule 56 enables a party contending that there is no genuine dispute
as to a specific, essential fact 'to demand at least one sworn averment of that fact before the
lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654,
657 (3d Cir. 1990), *quoting* Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).  The
burden then shifts to the non-movant to come forward with specific facts showing a genuine
issue for trial.  Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986);
Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-
movant must present affirmative evidence - more than a scintilla but less than a preponderance -
which supports each element of his claim to defeat a properly presented motion for summary
judgment).  The non-moving party must go beyond the pleadings and show specific facts by
affidavit or by information contained in the filed documents (i.e., depositions, answers to
interrogatories and admissions) to meet his burden of proving elements essential to his claim.
Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

    A material fact is a fact whose resolution will effect the outcome of the case under
applicable law.  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).  Although the court
must resolve any doubts as to the existence of genuine issues of fact against the party moving
for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon
bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v.
DuFresne, 676 F.2d 965, 969 (3d Cir. 1982).  Summary judgment is only precluded if the
dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury
could return a verdict for the non-moving party.  Anderson, 477 U.S. at 247-249.


    **D.    Discussion**
            **1.    Age Discrimination Claims**

    Plaintiff's Complaint asserts claims of age discrimination under the ADEA and the
PHRA.  "To prevail on an intentional age discrimination claim under either the ADEA or the

'analogous' provision of the PHRA, a plaintiff must show that his or her age actually motivated or had a determinative influence on the employer's adverse employment decision." <u>Fasold v. Justice</u>, 409 F.3d 178, 183-84 (3d Cir. 2005)(internal quotations and citations omitted). A plaintiff can satisfy this burden "(1) by presenting direct evidence of discrimination," or (2) by presenting indirect evidence of discrimination that satisfies the familiar three-step framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." <u>Id</u>. at 184 (additional citations omitted).

### a.      Direct Evidence of Age Discrimination

_____The analysis that applies when a plaintiff presents direct evidence of discrimination is the mixed motives analysis set forth in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989). In "mixed-motives" cases, a plaintiff must offer proof that discrimination was "a motivating part in an employment decision." <u>Id</u>. at 258. "To be 'direct' for purposes of the <u>Price Waterhouse</u> test, evidence must be sufficient to allow the jury to find that the decision makers placed a substantial negative reliance on the plaintiff's age in reaching their decision." <u>Glanzman v. Metropolitan Management Corp.</u>, 391 F.3d 506, 512 (3d Cir. 2004), <u>citing</u> <u>Fakete v. Aetna</u>, 308 F.3d 335, 388 (3d Cir. 2002). Importantly, however, the plaintiff cannot make this showing merely by introducing "'stray remarks in the workplace, statements by non-decisionmakers,' or 'statements by decision-makers unrelated to the decisional process itself.'" <u>Beshears v. Asbill</u>, 930 F.2d 1348, 1354 (8th Cir. 1991), <u>quoting</u> <u>Price Waterhouse</u>,490 U.S. at 277.

Here, Plaintiff has attempted to characterize certain statements attributed to Crawford and Hockenberry as direct evidence of age discrimination. In particular, Plaintiff cites Ball's deposition testimony that Crawford told her Plaintiff was not being considered for an associate director opening because "they were looking for someone young and fresh" and Plaintiff was "older and set in her ways." (See Ball deposition testimony attached as Exhibit I to Document 23, at p. 17). Plaintiff also cites Brenda Weber's testimony that, during lunch room

conversations with Crawford, Crawford stated that "they wanted younger, more updated people," and that, at the outset of Hockenberry's employment as New Castle's Director, he stated that, in order for the school to improve its appearance, it needed to, *inter alia*, hire younger instructors. (See Weber deposition testimony attached as Exhibit K to Document # 23, at pp. 71-72). Although, at first blush, these statements might appear to "directly reflect" a "discriminatory attitude," a closer look at the deposition testimony offered by Plaintiff reveals that the statements have either been mischaracterized or taken out of context. Furthermore, the record, as a whole, fails to offer direct evidence that age discrimination was a motivating factor in the challenged employment decisions.

## I.   Ball Testimony

Just prior to her testimony that Crawford allegedly made statements regarding Plaintiff's age, Ball denied that Crawford ever mentioned Plaintiff's age, or the age of any other staff member, as being a factor in any employment-related decision made by Crawford at New Castle. Specifically, Ball testified as follows:

> Q.   Prior to your last day in February of '04, did you ever have occasion to be in a conversation with Janice Crawford where the subject of age came up for directors or anything like that ever come up?
>
> A.   **Not age.  No.**

(See Ball deposition testimony attached as Exhibit I to Document # 23, at p. 16)(emphasis added.). Thus, there is no direct evidence of record to support Plaintiff's assertion that age played a part in Crawford's hiring decisions at New Castle. Moreover, the ensuing portion of Ball's deposition testimony, regarding the age-related statements attributed to Crawford, make clear that Crawford was simply relating alleged hiring considerations of Mrs. Camp (Executive Director at Beaver Falls Beauty School) for the Director position at Beaver Falls:

> Q.   Were you aware whether or not Catherine Bollinger was interested in being an associate director anywhere?

A.   She mentioned that someday that she wouldn't mind being a director along with – her and both Brenda Weber both had mentioned that, that they'd be interested in a position like that someday.

Q.   Did you ever have a conversation with Janice Crawford where Catherine Bollinger's interest in becoming a director ever came up?

A.   I don't know if really talked about the fact that [Plaintiff] was interested in a director.  It was more than that when the **Beaver Falls position** come up and she was looking for somebody, I asked her, she was thinking about Alex, one of our students.  And I asked her why wouldn't she consider [Plaintiff] or Brenda for the position.

Q.   And her being?  You asked her, who's the her?

A.   I'm sorry.  Janice Crawford.

Q.   Did you get an answer?

A.   She said that they were looking for someone young and fresh **for the Beaver Falls School, that Mrs. Camp wanted someone —,** but [Plaintiff] was older and set in her ways and Brenda just didn't have the look.

Q.   Did this conversation that you had with Janice Crawford take place face to face?

A.   Yes, at the beauty school, New Castle School.

Q.   Are you certain that she used the term young and fresh **to refer to the kind of person they were looking for, for the opening in Beaver Falls?**

A.   Younger and fresh, **yes.**

(Id. at pp. 16-17).

Crawford was never the Executive Director of Beaver Falls Beauty School and, thus, did not have the authority to select the Director at Beaver Falls. (See Crawford Affidavit attached as Exhibit A to Document # 23, at ¶ 2; Crawford deposition testimony attached as Exhibit G to Document # 23, at pp. 27-28)  Consequently, the age-related statements Ball attributed to Crawford fall in the category of "statements by decision-makers unrelated to the decisional process itself," which are insufficient to prove that age discrimination was a motivating part in the challenged employment decisions.  See, Beshears, 930 F.2d at 1354, quoting Price Waterhouse, 490 U.S. at 277.

9

### ii.     Weber Testimony

During her deposition, Weber was given the opportunity to provide her understanding of

Crawford's alleged statement that "they wanted younger, more updated people:"

> Q.    Did Ms. Crawford ever make any comments to you that indicated
>       that she considered someone's age as part of their qualifications
>       for the director's position?
>
> A.    I don't know that she would come right out and say it as age.
>       She would say that they wanted a younger, updated, someone
>       more into — I don't know how I want to phrase it that it doesn't
>       come out —, more up to date on newer, trendier —,
>
> Q.    Okay.  She made comments to the effect that they're looking for
>       a director who was up to date with the current styles, trends, and
>       the like?
>
> A.    And would you agree with me that whether that person was 60 or
>       20, if they were able to connect with the — you understood her to
>       be saying if they could connect with the younger generation,
>       know what the styles are and the trends, that's what they were
>       looking for, someone who was up to date?
>
> Q.    Something yeah, in that order.

(Weber deposition testimony attached as Exhibit K to Document # 23, at pp. 49-50).

Thus, placed in the proper context, Crawford's statement that "they wanted younger,

more updated people" related more to a Director candidate's ability to relate to the younger

generation's styles and trends than to the candidate's chronological age.  This is evident from

the fact that, when the time came to fill the vacancy at New Castle created by Ball's departure,

Crawford bypassed two younger candidates, including Weber, and hired the 52-year old

Genareo and, subsequently, the nearly 46-year old Hockenberry.


### iii.     Hockenberry's Statement

The final piece of "direct evidence" of age discrimination offered by Plaintiff is that, at

the onset of his employment as New Castle's Director, Hockenberry allegedly stated that, in

order for the school to improve its appearance, it needed to hire younger instructors.  Regardless

10

of whether such a statement was made, however, the record is devoid of any evidence that younger instructors were, in fact, hired during Hockenberry's tenure.  In fact, even after Plaintiff's employment at New Castle had ended, Hockenberry did not take the opportunity to hire a significantly "younger instructor" to replace her, but, rather, chose to have Plaintiff's duties and classes assigned to Hetrick, who is only three years and nine months younger than Plaintiff.  Furthermore, Plaintiff acknowledged that Hockenberry never made any comments to Plaintiff about her age relative to her employment. (See Bollinger deposition testimony, Vol. II, attached as Exhibit J to Document # 23, at p. 107).  Thus, Hockenberry's alleged statement, like Crawford's statements discussed above, were, at most, stray remarks unrelated in time and substance to the employment decisions at issue in this case.  As such, they are to be given little weight as "direct evidence" of discrimination.  See, e.g., Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992)("stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision"); Johnson v. McGraw-Hill Companies, 451 F.Supp.2d 681, 695 (W.D.Pa. 2006)(rejecting "the proposition that a few stray [age-based] remarks by individuals in managerial positions can alone support a claim under the ADEA").

Based on the foregoing, therefore, this Court finds that Plaintiff has failed to meet her burden of presenting direct evidence of age discrimination.  As a result, this Court will turn its attention to whether Plaintiff has met her burden of presenting indirect evidence of age discrimination under the framework first established by the Supreme Court in McDonnell Douglas.

**b.    Indirect Evidence of Age Discrimination**

Under the McDonnell Douglas burden-shifting scheme, Plaintiff must first establish a prima facie case of age discrimination by proving the following four basic facts: (i) she is over

11

the age of forty; (ii) she was qualified for the position in question; (iii) she was the subject of an adverse employment action; and (iv) either "her replacement was sufficiently younger to permit a reasonable inference of age discrimination," Potence v. Hazelton Area School District, 357 F.3d 366, 370 (3d Cir. 2004), or " a similarly situated younger person was treated more favorably." Fasold, 409 F.3d at 184-85.  To survive a motion for summary judgment, the evidence must be "'sufficient to convince a reasonable factfinder to find all of the elements of [the] prima facie case.'"  Connors v. Chrysler Fin. Corp., 160 F.3d 971, 973 (3d Cir. 1998), quoting Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)(en banc).

Once a prima facie case is established, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action.  McDonnell Douglas, 411 U.S. at 806.  The employer need not persuade the court that it was actually motivated by the proffered reasons, but needs only to raise a factual issue as to whether it discriminated against the plaintiff.  This burden is satisfied if the employer "simply 'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'" Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, n.2 (1978).  Thus, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 257 (1981).

Once the employer has met its relatively light burden by articulating a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered explanation is pretextual.  Id. Plaintiff may meet this burden either directly, by persuading the court that the employer's action was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S. at 804-805.

Throughout this burden-shifting paradigm the ultimate burden of proving intentional

12

discrimination always rests with the plaintiff.  See Burdine, 450 U.S. at 253-256.  Plaintiff may meet this burden if his "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

## I.   *Prima Facie* Case

In this case, New Castle argues that Plaintiff cannot meet her initial burden of proving a *prima facie* case of age discrimination because she cannot satisfy the fourth element.[2] Specifically, New Castle contends that Plaintiff has failed to identify any  "similarly situated younger person" who was treated more favorably, and is unable to prove that the circumstances of this case raise an inference of unlawful age discrimination.  Although, in her Complaint, Plaintiff asserts that, "[a]t the time Plaintiff's employment was terminated, substantially younger employees, including Tanya White and Mr. Hockenberry, were treated more favorably...," Plaintiff has failed to establish, or even argue, that such individuals were "similarly situated" to Plaintiff. (See Complaint at ¶ 32).[3]  Thus, this Court's attention will focus on whether Plaintiff

---

[2]

Defendant also argues that Plaintiff has failed to satisfy the third element because she cannot prove that she was subject to an adverse employment action.  In this regard, New Castle asserts that Plaintiff resigned from her position as instructor on March 23, 2005; however, Plaintiff contends that she was terminated on March 24, 2005.  Recognizing that there is a genuine issue of material fact with regard to this element of the *prima facie case*, New Castle has chosen to focus attention on its claim that Plaintiff has failed to satisfy the fourth element of her *prima facie* case, for purposes of this summary judgment motion.

[3]

"[T]o be deemed 'similarly situated', the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).  See also Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 751 (1st Cir. 1996)(proposed comparable employees must be similarly situated in all "material respects"); Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 803 (6th Cir. 1994)(stating that "[i]n order for two or more employees to be considered similarly-situated ... the plaintiff must prove that all of the relevant aspects of his employment situation are nearly identical to those of the employees who he alleges were treated more favorably").

can meet her burden of proving that the circumstances of this case raise an inference of age discrimination, for purposes of satisfying the fourth prong of her *prima facie* case.

### a.      Director Position

Plaintiff first argues that, in February 2004, she applied for the position of Director at New Castle, but that New Castle "ultimately selected Dennis Hockenberry, a substantially younger, male employee who was significantly less qualified than Plaintiff, to fill the vacant Director position." (Document # 9, Amended Complaint, at ¶ 13).  As New Castle has pointed out, however, this argument is factually inaccurate.

At the time Plaintiff applied for the Director position in February 2004, she was 53 years of age.  The other three applicants for the position were:  (I) Genareo, age 52 years, 10 months; (ii) Weber, age 39 years, 3 months; and (iii) Jamie Boyer, age 30 years, 10 months. Hockenberry had not applied, nor was he even considered for the Director position, at such time. (See Crawford Affidavit attached as Exhibit A to Document # 23, at ¶¶ 12, 22-23).  After considering the four applicants for the Director position, Crawford chose to hire the 52- year old Genareo to fill the vacant Director position and, in the process, passed over two significantly younger candidates in Weber and Boyer.  The *de minimis* difference in age between Genareo and Plaintiff is woefully insufficient to satisfy the "sufficiently younger" element that Plaintiff must establish to support an inference of age discrimination.

It is also significant to note that Crawford, the individual who made the decision to hire Genareo, was a member of Plaintiff's protective class, being nearly 55 years of age, at the time the hiring decision was made. (See Crawford Affidavit attached as Exhibit A to Document # 23, at ¶ 6).  The Third Circuit has noted that "[t]he inference of age discrimination is further rebutted by the fact that [the decisionmaker] was herself over the age of forty."  Burns v. Potter, 2007 WL 406201 at * 6 (M.D.Pa. 2007), citing Sherrod v. Booker T. Washington, 2006 WL 270317 (W.D.Pa. 2006).  See also Elwell v. PP&L, Inc., 47 Fed. Appx. 183 (3d Cir. 2002),

citing Dungee v. Northeast Foods, Inc., 940 F.Supp. 682, 688, n.3 (D.N.J. 1996)(holding that an employee's ability to raise an inference of discrimination is hampered where, as here, the decision-makers are members of the employee's protected class).

Despite the foregoing, Plaintiff has seized upon the fact that Genareo was terminated as Director only a few months after she was hired and, thus, contends that the relevant hiring decision at issue is the decision to select Hockenberry as Director in June 2004, after Genareo was terminated. However, there is no evidence of record indicating that Plaintiff reapplied for the Director position after Genareo was terminated. In fact, Crawford confirms in her affidavit that "[Plaintiff] did not apply for the position of Director of the New Castle Beauty School after the termination of Genareo's employment." (See Crawford Affidavit attached as Exhibit A to Document # 23, at ¶ 24). This fact is supported by Plaintiff's deposition testimony that she believed she submitted her resume for the Director position "before Sandy Genareo was hired" (See Bollinger Deposition, Vol. II, attached as Exhibit J to Document # 23, at p. 39), and is further supported by Plaintiff's acknowledgment in her opposition brief that "[t]he February 2004 date referenced in the Amended Complaint is the time that Plaintiff submitted a written application and letter of interest **for the vacancy caused by Ball's termination**." (Document # 27, Plaintiff's Brief, at p. 8)(emphasis added).

Nonetheless, even if it is assumed, for argument's sake, that Plaintiff did express her interest in the vacant Director position after Genareo was terminated, the fact remains that Hockenberry, himself, was nearly 46 years of age at the time he was hired. In Narin v. Lower Merion School District, 206 F.3d 323 (3d Cir. 2000), the Third Circuit Court found that the difference in age between a 56-year old employee and one who was 49 years old was not sufficient enough to allow an inference of discrimination. Id. at 333 n. 9. Similarly, the United States District Court for the Eastern District of Pennsylvania recently determined that an insufficient age gap existed between a 53-year old employee and his 46-year old replacement to permit an inference of age discrimination. Angelico v. Agilent Technologies, 2006 WL

15

2854377 (E.D.Pa. Oct. 3, 2006).  Indeed, at least one court in our circuit has found that, based on Third Circuit Court jurisprudence, there is a categorical requirement that the age difference be at least 8 years for an inference to exist.  See Stafford v. Noramco of Del., Inc., 2000 WL 1868179 at * 3 n. 14 (D.Del. Dec. 15, 2000), aff'd 32 Fed. Appx. 32 (3d Cir.), cert. denied 537 U.S. 917 (2002).  See also Grosjean v. First Energy Corp., 349 F.3d 332, 338-40 (6th Cir. 2003)(collecting cases and stating "[t]he overwhelming body of cases in most circuits has held that age differences of less than ten years are not significant enough to make out the fourth part of the age discrimination prima facie case"), cert. denied, 541 U.S. 1010 (2004).

Thus, even considering Plaintiff's argument that Hockenberry was selected over her for New Castle's Director position, the foregoing precedent overwhelmingly suggests that the difference in age between Plaintiff (age 53) and Hockenberry (age 46) was insufficient to establish an inference of discrimination.  See, e.g., Angelico, 2006 WL 2854377 at * 4 ("[w]hile we do not believe that [the age disparity] issue lends itself to such precise quantification, we cannot find a sufficient age gap [between a 53-year old and a 46-year old] to permit an inference of age discrimination.").

Based on the foregoing, therefore, this Court finds that Plaintiff has failed to meet the fourth element of her *prima facie* case of age discrimination with regard to the hiring of New Castle's Director in 2004.

### b.      Plaintiff's Separation From Employment

Plaintiff also contends that she was terminated from her job at New Castle for reasons related to her age. (Document # 9, Amended Complaint, at ¶ 34).  Specifically, Plaintiff argues that both Hockenberry and Crawford "expressed a desire for younger, fresher employees" and that Hockenberry had a "stated goal of getting younger instructors." (Document # 27, Plaintiff's Brief, at p. 13).  Plaintiff argues further that, in an effort to pursue these objectives, Hockenberry "engaged in the systematic abuse of Plaintiff" which ultimately caused Plaintiff to become

"upset enough that she asked to go home." (Id. at p. 14).  Plaintiff alleges that Crawford and Hockenberry then "seized upon this as a resignation, supporting this position by attributing various statements indicating a desire to resign to Plaintiff which she did not make." (Id.). Finally, Plaintiff contends that, after she was allegedly terminated, New Castle attempted to hire a younger instructor to replace her. (Id.).  Plaintiff, thus, concludes that these circumstances, taken as a whole, are sufficient to establish an inference of age discrimination.

In response, New Castle has reiterated its argument that Plaintiff was not terminated but, in fact, resigned from her position as an instructor.  Accordingly, New Castle disputes that Plaintiff was subject to an adverse employment decision.  Having preserved its argument in this regard, however, New Castle has acknowledged that the parties' disagreement over the nature of Plaintiff's separation from employment creates a genuine issue of fact that may not be determined on summary judgment.  Nevertheless, New Castle asserts that this dispute is immaterial and does not preclude the entry of summary judgment because, even assuming Plaintiff was "terminated," she cannot meet her burden of proving that her age was a motivating factor in her termination.  This Court agrees.

Despite the circumstantial evidence offered by Plaintiff in support of her claim, Plaintiff cannot refute the fact that, after her "termination," her duties were assumed by Hetrick, who was of comparable age.  Thus, Plaintiff has failed to demonstrate that "her replacement was sufficiently younger to permit a reasonable inference of age discrimination." Potence, 357 F.3d at 370.  Further belying an inference of age discrimination is the fact that Crawford, the individual responsible for making the decision to "terminate" Plaintiff, is older than Plaintiff. See Burns v. Potter, 2007 WL 406201 at * 6.

Based on the foregoing, therefore, this Court concludes that Plaintiff has failed to meet the fourth element of her *prima facie* case of age discrimination with regard to her alleged "termination."  As a result, New Castle's motion for summary judgment should be granted with

regard to Plaintiff's age discrimination claims under both the ADEA and the PHRA.

### ii.    Pretext

Alternatively, even if it is deemed that Plaintiff has presented a prima facie case of discrimination, she has the ultimate burden of proving by a preponderance of evidence that New Castle's legitimate, non-discriminatory reasons for selecting Genareo and/or Hockenberry as its Director in 2004, and for "terminating" Plaintiff's employment, were actually pretexts for age discrimination. Burdine, 450 U.S. at 257. To do so, Plaintiff must *either* (I) discredit the proffered reasons, either circumstantially or directly, or (ii) adduce evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). As discussed below, Plaintiff has failed to meet this burden.

### a.    New Castle's Proffered Reasons

According to New Castle, both Genareo and Hockenberry were chosen as Directors, because each had excellent credentials for the position. In particular, New Castle points out that Genareo had been a State Certified Teacher of Cosmetology since September 1971, and had worked for five years as a cosmetology instructor, where she gained significant experience instructing and counseling students. (Document # 21, New Castle's Memorandum, at p. 16). According to Crawford, Genareo was selected based upon her experience and the strength of her interview. (Crawford Affidavit attached as Exhibit A to Document # 23, at ¶ 17). Crawford states further that she did not select Plaintiff for the position because she "believed Genareo had stronger management experience and [Plaintiff] tended to be too familiar and friendly with students, which tendency, [Crawford] believed, compromised her ability to supervise and discipline students." (Id.).

With regard to the decision to hire Hockenberry, Crawford indicates that she "was

impressed with [his] career school, management, and salon experience, and decided to offer [him] the Director's position, which he accepted." (Crawford Affidavit at ¶ 23). Crawford notes further that Plaintiff "did not apply for the position of Director of [New Castle] after the termination of Genareo's employment." (Id. at ¶ 24).

This Court finds that the foregoing explanations are sufficient to meet New Castle's relatively light burden of articulating legitimate, non-discriminatory reasons for its challenged hiring decisions. See Burdine, 450 U.S. at 257 ("the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus"); Sweeney, 439 U.S. at 25 n.2 (employer's burden is satisfied if it "simply 'explains what [it] has done' or 'produc[es] evidence of legitimate nondiscriminatory reasons.'").

Similarly, New Castle's actions relative to Plaintiff's separation from employment are supported by legitimate, non-discriminatory reasons. In particular, Crawford notes that, during her separate meeting with Plaintiff on March 23, 2005, Plaintiff told her that she felt "'it just was not working out' and that "she felt she might as well quit and go to WalMart to work.'" (Crawford Affidavit at ¶ 29). In fact, Plaintiff acknowledged during her deposition that she told Crawford that her husband had been encouraging her to quit, and that she had already taken some of her important items from her office. In addition, Plaintiff did not deny making the statement about quitting and going to work at WalMart, stating that she was "angry and upset" and "might have mentioned it." (Bollinger deposition, Vol. II, attached as Exhibit J to Document # 23, at p. 114-15). Later the same day, Plaintiff became visibly upset at a general staff meeting, then got up and left the room, asking to go home. (Crawford Affidavit at ¶ 32; Bollinger deposition, Vol. II, at p. 120). As a result of Plaintiff's behavior, Crawford explains that, "[a]fter [Plaintiff] walked out on March 23, 2005, I understood that [Plaintiff] had resigned her position...." (Crawford Affidavit at ¶ 34). This explanation is sufficient to meet New Castle's burden of articulating legitimate, non-discriminatory reasons for ending its employment

relationship with Plaintiff.

**b.      Plaintiff's Evidence of Pretext**

In an attempt to discredit the legitimate reasons proffered by New Castle with regard to its hiring decisions, Plaintiff reiterates Crawford's alleged statements to Plaintiff and Weber that Plaintiff was too old for the Director position and that she wanted "younger, updated employees."  As discussed earlier, however, these statements were allegedly made prior to Ball's separation from employment.  Crawford's subsequent action of hiring the 52-year old Genareo to fill the vacant Director position created by Ball's departure, while bypassing two younger Director candidates, negates any discriminatory inference that might otherwise be drawn from her alleged statements.  The same is also true with regard to Crawford's subsequent decision to hire Hockenberry, who was nearly 46 years of age at the time the decision was made. Thus, Crawford's alleged statements fail to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes, 32 F.3d at 765 (citation omitted); Fucci v. Graduate Hospital, 969 F.Supp. 310, 316 (E.D.Pa. 1997).

With regard to Plaintiff's "termination" claim, Plaintiff argues that Crawford "attributed various statements indicating an intent to resign to Plaintiff that she simply did not make and Plaintiff merely asked to go home after being subjected to vicious attacks on her character and professional abilities by Mr. Hockenberry." (Document # 27, Plaintiff's Opposition Brief, at p. 18).  Viewed in the best possible light, this argument suggests that Crawford was wrong or mistaken in her belief that Plaintiff had resigned.  Nevertheless, "[t]o discredit the employer's proffered reason, ... the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d

at 765 (citations omitted).  "In simpler terms, [Plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."  Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).  Plaintiff has failed to meet this burden.

It is Plaintiff's ultimate burden to prove by a preponderance of evidence that New Castle's proffered reasons were not its true reasons, but were a pretext for discrimination. While the Court recognizes that requiring such proof "places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'"  Id. at 765, quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992).  In this case, Plaintiff has simply failed to meet her burden of proving that New Castle's proffered reasons for its challenged actions were, in actuality, pretexts for age discrimination. Accordingly, New Castle's motion for summary judgment should be granted with regard to Plaintiff's age discrimination claims under both the ADEA and the PHRA.

## 2.    Gender Discrimination Claims

Plaintiff has also asserted claims of gender discrimination pursuant to Title VII and the PHRA.  "The proper analysis under Title VII and the PHRA are identical, as Pennsylvania courts have construed the protection of the two acts interchangeably."  Weston v. Commonwealth of Pennsylvania, 251 F.3d 420, 425 n. 3 (3d Cir. 2001); Marzano v. Computer Science Corp., Inc., 91 F.3d 497, 503 n. 2 (3d Cir. 1996)(citations omitted).

Analysis of Plaintiff's gender discrimination claims follows the same framework described above with regard to her age discrimination claims.  Specifically, a claim can be proven by presenting either:  (i) direct evidence of discrimination under a "mixed motives" theory of liability, Price Waterhouse, 490 U.S. 228 (1989), or (ii) circumstantial evidence of discrimination under the burden shifting paradigm first established in McDonnell Douglas, 411

U.S. 792 (1973).

### a.   Direct Evidence of Gender Discrimination

"At a bare minimum, a plaintiff seeking to advance a mixed motive case will have to adduce circumstantial evidence 'of conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude.'" Griffiths v. CIGNA Corp., 988 F.2d 457, 470 (3d Cir.), cert. denied 510 U.S. 865 (1993), quoting Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992).  In this regard, Plaintiff has directed this Court to the deposition testimony of Plaintiff and Weber indicating that, "in the three day period between Ms. Genareo's termination and the hire of Mr. Hockenberry, Ms. Crawford informed Ms. Weber and Plaintiff that she wanted to hire a man for the position as she thought a man would be able to handle the students better." (Document # 27, Plaintiff's Opposition Brief, at p. 19; Bollinger deposition, Vol. II, at p. 109; Weber deposition at p. 67).

While she was not given the opportunity to admit or deny making this statement during her deposition, Crawford states in her affidavit that "Hockenberry's gender was not a factor in my decision to hire him." (Crawford Affidavit at ¶ 23).  Nevertheless, the statement attributed to Crawford, if true, raises a sufficient inference of discriminatory bias to meet the "bare minimum" requirement outlined in Griffiths.

As the Third Circuit noted in Schoonjongen v. Curtiss-Wright Corp., 143 F.3d 120 (3d Cir. 1998):

> [C]ertain scenarios may arise where a material fact cannot be resolved without weighing the credibility of a particular witness or individual - **such as when the defendant's liability turns on an individual's state of mind and the plaintiff has presented circumstantial evidence probative of intent**.  In such a case, we have said that summary judgment is inappropriate because there is a sufficient quantum of evidence on either side for reasonable minds to differ and therefore the issue is 'genuine.'

Id. at 130 (emphasis added).

22

Based on Crawford's alleged statement, described above, this Court finds that Plaintiff has put forth sufficient evidence to raise a triable issue of fact as to whether gender bias tainted the decision to hire Hockenberry.

Thus, the burden falls upon New Castle to demonstrate that the same hiring decision would have been made on legitimate grounds, regardless of gender.  In this regard, New Castle simply argues that Hockenberry was "extremely well-qualified for the position." (Document # 21, New Castle's Brief, at p. 21).  While this Court agrees that Hockenberry was clearly well-qualified for the position, we cannot conclude as a matter of law that those qualifications were so superior to those of the Plaintiff that he would have been hired even in the absence of the alleged gender bias.  Such an issue is properly reserved for the jury.

Based on the foregoing, therefore, New Castle's motion for summary judgment with regard to Plaintiff's gender discrimination claim should be denied.


### III.    CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's motion for summary judgment [Document # 20] be granted in part and denied in part, as follows:

> 1.    Defendant's motion for summary judgment should be granted with regard to Plaintiff's age discrimination claims, and such claims should be dismissed; and
>
> 2.    Defendant's motion for summary judgment should be denied with regard to Plaintiff's gender discrimination claim, and such claim should be allowed to proceed to trial.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.  See e.g., Nara v. Frank, ___ F.3d ___, 2007 WL 1321929 (3d

Cir. May 8, 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief United States Magistrate Judge

Dated: September 7, 2007

cc:    The Honorable Sean J. McLaughlin
        United States District Judge